IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TAMIKA ABRAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-cv-335-JTA |
| | ) | |
| KILOLO KIJAKAZI, | ) | (WO) |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Tamika Abrams ("Abrams") brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Abrams's applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court construes Abram's brief in support of her Complaint (Doc. No. 11) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment (Doc. No. 12). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 14, 15.)

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Abrams's motion for summary judgment is due to be DENIED, the

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I.     PROCEDURAL HISTORY AND FACTS

Abrams was 40 years old at the time of the administrative hearing held on September 8, 2021. (R. 34, 41.)[2] She obtained her GED and completed one year of college. (R. 42, 77.) She previously worked as a certified nursing assistant, auto part assembler, cook, and cashier. (R. 24, 43-44, 56-57.) She alleged a disability onset of January 1, 2017, and later amended the onset date to March 26, 2020. (R. 42.)

On May 29, 2019, Abrams filed applications for a period of disability and DIB under Title II of the Social Security Act and for SSI under Title XVI of the Social Security Act. (R. 15, 39.) These applications were denied initially on July 19, 2019. (R. 15.) Following an administrative hearing, the Administrative Law Judge ("ALJ") denied Abrams's request for benefits in a decision dated September 29, 2021. (R. 12-26.) Abrams requested review by the Appeals Council and the Appeals Council denied review. (R. 1-3.) Thus, the hearing decision became the final decision of the Commissioner.[3]

On June 3, 2022, Abrams filed the instant action seeking review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions and this matter is ripe for review.

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 13.)

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

## II.     STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the

3

Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.    STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that she is disabled.[4]  *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920.  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  The evaluation is made at the hearing conducted by the ALJ.  *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial gainful activity" is work activity that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that

---

[4] Although DIB and SSI are separate programs, the standards for determining disability are identical. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012).

significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that she is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Abrams met the insured status requirements of the Social Security Act through March 31, 2023, and had not engaged in substantial gainful activity since the amended alleged onset date of March 26, 2020. (R. 17.) The ALJ determined that Abrams suffers from the following severe impairments that significantly limit her ability to perform basic work activities: right carpal tunnel syndrome, essential hypertension, empty sella syndrome, post-traumatic headaches, and epilepsy. (R. 18.) The ALJ determined that Abrams suffers from the following non-severe impairments: asthma, diabetes mellitus, overactive bladder, hyperlipidemia, major depressive disorder, and post-traumatic stress disorder. (R. 18.)

The ALJ concluded that Abrams's physical impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19.) The ALJ explained that the record did not show that Abrams satisfied the criteria for the listings for cardiovascular system disorder, epilepsy and peripheral neuropathies. (R. 19-20.)

After consideration of the entire record, the ALJ determined that Abrams retains the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[5] with the following limitations:

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary

> [Abrams] can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She must avoid all exposure to hazards. [Abrams] is limited to work involving only simple, routine tasks, but not at a production rate pace. She is limited to no more than simple work-related decisions. She can tolerate no more than occasional changes in the work setting.

(R. 20.) In assigning this RFC, the ALJ found Abrams's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but her statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. (R. 21.)

In support of his finding, the ALJ thoroughly summarized the medical records. (R. 21-23.) The ALJ mentioned that Abrams alleged she was limited in her ability to work due to high blood pressure, upper respiratory infection, asthma, diabetes mellitus type 2 and carpal tunnel syndrome. (R. 21.) The ALJ noted specifically that Abrams had sought treatment and was treated for carpal tunnel syndrome in both hands, numbness and tingling of the neck, chest pain, lung infection, hypertension, empty sella syndrome, seizures, and depression.

In regard to her carpal tunnel syndrome, the ALJ noted that Abrams complained of right hand pain, numbness and tingling that was aggravated by movement; and that "[a]t their worst her symptoms were moderate." (R. 21.) Abrams was diagnosed with carpal tunnel syndrome and provided a wrist splint. The ALJ noted that later, on June 4, 2020, Abrams complained of hand numbness, "more so [sic] in the left hand …." (R. 22.) The ALJ discussed Abrams's orthopedic appointments from July 8, 2020 and August 7, 2020.

---

work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

(R. 22.) The ALJ noted that the records from the July 2020 appointment revealed Abrams "had mild weakness in [her] grip strength." (R. 22.) The ALJ further noted that the records from the August 2020 appointment revealed Abrams was referred to physical therapy for carpal tunnel syndrome. (R. 22.) The ALJ discussed an August 3, 2020, neurology consultation where Abrams complained of numbness and tingling from behind her left ear, down her neck, and into the left arm and hand. (R. 22.) The ALJ observed that "[a]n EMG on August 3, 2020 determined that [Abrams] had moderate right carpal tunnel syndrome; however no widespread sensorimotor peripheral neuropathy was seen of the left upper extremity. There was no electrophysiological evidence of left carpal tunnel syndrome, left ulnar neuropathy or left tardy ulnar neuropathy." (R. 22.) The ALJ noted that, on September 22, 2020, Abrams informed a neurologist "that the physical therapy was helping … her left hand but not her right. She was planning on having surgery on the right side." (R. 22.) The ALJ also noted that Abrams continued to complain of numbness in her hands at her neurology appointment on January 15, 2021 and stated that her headaches were better. (R. 22.) The ALJ observed that a month later, on February 8, 2021, Abrams reported that her carpal tunnel syndrome was unchanged. (R. 22.) The ALJ mentioned that Abrams reported "persistent numbness and tingling" in her right hand and fingers at an orthopedic appointment on March 1, 2021, and had a right carpal tunnel release performed on April 6, 2021. (R. 23.)

The ALJ also discussed Abrams's history and treatment for hypertension and asthma for which she was prescribed antihypertensive medication and an inhaler. (R. 21-22.) The ALJ observed that Abrams complained of increased depression and elevated blood

8

pressure in July 2021 and reported that she suffered two seizures "in the past two weeks." (R. 23.) The ALJ indicated Abrams was prescribed medication and referred for a psychiatric evaluation. (R. 23.) The ALJ also noted Abrams's history of pulmonary embolism, complaints of and diagnosis for acute chest pain in October 2016, and that Abrams was discharged from the emergency department in stable condition. (R. 21.)

The ALJ also discussed the medical records relating to Abrams's headaches, shoulder and neck pain. (R. 22.) The ALJ noted that, on July 8, 2020, Abrams's "cervical spine range of motion was near normal and there was no tenderness over the cervical spine[;] … [h]er left shoulder examination showed near full range of motion. She had a negative Jobe's test and a negative Hawkins test. She had failed improvement with the muscle relaxant, anti-inflammatory medication and wrist braces." (R. 22.) The ALJ also noted that on August 3, 2020, the impression of Abrams's complaints "was left-sided headaches that are possibly post-traumatic." (R. 22.) The ALJ observed that an August 6, 2020, MRI of Abrams's brain "showed an empty sella syndrome and was otherwise normal. … A lumbar puncture was recommended." (R. 22.) The ALJ also observed that Abrams complained in September 2020 that she continued to have "right sided headaches with visual disturbance and blurred vision" and that Abrams reported her headaches "were better" in January 2021 after she started taking Topamax. (R. 22.) The ALJ further observed that in July 2021 Abrams "had increased her Topamax dosage" and "and she was instructed to take it as prescribed." (R. 23.)

The ALJ considered a residual functional capacity assessment completed by Dr. Krishna Reddy, a Disability Determination Service Medical Consultant. (R. 23.) The ALJ

observed that Dr. Reddy opined that Abrams can occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; stand and walk for 6 hours in an 8-hour workday; sit 6 hours in an 8-hour work day; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch and crawl; and must avoid all exposure to hazards. (R. 23.) The ALJ found Dr. Reddy's opinion only somewhat persuasive, stating that "the medical records of upper extremity limitations show more lifting and carrying limitations to the extent that [Abrams] is limited to light exertion." (R. 23.) The ALJ noted that "There are no extensive symptoms or treatment to suggest [Abrams] is limited to sedentary exertion or less." (R. 23.)

The ALJ also considered the opinions from Abrams's primary care provider, treating nurse practitioner Bridget Wilson. (R. 23.) The ALJ found Nurse Wilson's July 27, 2021 opinions "only somewhat persuasive because the treating records do not show [such an] extensive degree of symptoms/limitations (B21F)." (R. 21.)

Based upon the testimony of a vocational expert ("VE"), the ALJ determined that Abrams is unable to perform any past relevant work. (R. 24.) The ALJ also found that based upon Abrams's age, education, work experience and RFC, there are jobs that exist in "significant numbers in the national economy" that she can perform, and therefore Abrams was not disabled as defined by the Act. (R. 25.) The ALJ determined that Abrams could work as a garment sorter, routing clerk, and rental clerk. (R. 25.) The ALJ concluded that Abrams had not been under a disability from the alleged amended disability onset date through the date of the ALJ's decision. (R. 25.)

## V. DISCUSSION

On appeal, Abrams argues the ALJ failed to afford proper persuasiveness to the opinion of Nurse Wilson because, "[u]nder the current regulations, Ms. Wilson's treating source medical opinion should be found persuasive." (Doc. No. 11 at 10, 15.) The Commissioner argues that substantial evidence supports the ALJ's finding because Nurse Wilson's own treatment notes did not support her opinion, she provided little explanation for the limitations, and her opinion was inconsistent with treatment notes from other sources. (Doc. No. 12 at 5, 6, 7.) The Court agrees with the Commissioner.

The ALJ considers medical opinions from acceptable medical sources, which include licensed advanced practice registered nurses or other licensed advanced practice nurses, with another title "for impairments within his or her licensed scope of practice." 20 C.F.R. § 404.1502(a)(8). The regulations define a medical opinion as

> … a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [the claimant] [has] one or more impairment-related limitations or restrictions in the following abilities:
>
> (i) [Her] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) [Her] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) [Her] ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) [Her] ability to adapt to environmental conditions, such as temperature extremes or fumes.

11

20 C.F.R. § 404.1513(a)(2). The regulations direct the ALJ to "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

> When a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors [the ALJ] considers when … evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)….

20 C.F.R. § 404.1520c(a).

The regulations direct the ALJ to evaluate the persuasiveness of each medical source using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization of the medical source, and (5) other factors. 20 C.F.R. § 404.1520c(1)(c). The ALJ must explain in his decision how he considered the factors of supportability[6] and consistency[7] in his determination of overall persuasiveness of each source. 20 C.F.R. § 404.1520c(b)(2) ("[S]upportability ... and consistency ... are [t]he most important factors we consider when we determine how persuasive we find a medical

---

[6] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[7] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

12

source's opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision."). "When weighing medical opinion evidence, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record." *Wines v. Acting Comm'r of Soc. Sec.,* No. 21-13606, 2022 WL 2526586, at *3 (11th Cir. July 7, 2022).

The persuasiveness analysis should turn on whether "the medical source's opinion is (1) supported by the source's own records and (2) consistent with other evidence of record." *Podeszwa v. Kijakazi,* No. 3:21-CV-223-JTA, 2022 WL 4357434, at *7 (M.D. Ala. Sept. 20, 2022) (citation and internal quotation marks omitted). The ALJ is not required to explain how he considered the remaining factors unless he finds two or more medical opinions are equally well-supported and consistent with the record but are not exactly the same. *Gogel v. Comm'r Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *6 (M.D. Fla. Sept. 20, 2021).

On July 27, 2021, Nurse Wilson completed a Physical Capacities Evaluation ("PCE") and Clinical Assessment of Pain ("CAP") for Abrams. (R. 985-86.) In the PCE, Nurse Wilson opined that Abrams could lift and carry 20 pounds occasionally to 10 pounds frequently, could sit 6 hours in an 8-hour workday, could stand or walk 4 hours in an 8-hour workday, could occasionally perform pushing and pulling movement, could occasionally perform gross manipulation, could occasionally perform fine manipulation, could occasionally perform bending and/or stooping movements, could occasionally

13

perform reaching, could occasionally operate motor vehicles, could rarely climb and balance, could rarely work with environmental problems and could rarely work with or around hazardous machinery. (R. 985.) Nurse Wilson also opined that Abrams would likely be absent from work two days per month as a result of her impairments. (R. 985.) In the space provided on the PCE to explain the "degree and basis for" the restrictions, Nurse Wilson noted: "Patient known with multilevel degenerative disk disease and recent carpal tunnel of the right upper extremity." (R. 985.)

As to the CAP, Nurse Wilson opined that Abrams's pain is present to the extent that it is "distracting to adequate performance of daily activities or work[,]" that physical activity "greatly" increases Abrams's pain "to such a degree as to cause distraction from tasks or total abandonment of task[s]" and the side effects of Abrams's prescribed medication "can be expected to be severe and to limit effectiveness" of her ability to perform her work "due to distraction, in attention [sic], drowsiness, etc." (R. 986.)

In the hearing decision, the ALJ observed that Nurse Wilson opined the following:

> [Abrams] can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She can sit 6 hours in an 8-hour workday, and she can stand and/or walk 4 hours in an 8-hour workday. She does not require a[n] assistive device to ambulate. She can rarely climb stairs or ladders and balance. She can rarely have exposure to environmental problems such as allergens and dust. She can rarely work with or around hazardous machinery. She can occasionally push and pull with her arm and/or leg controls. She can occasionally do gross manipulation of grasping, twisting and handling, fine manipulation (finger dexterity), bending and/or stooping movements and operating motor vehicles. Ms. Wilson opined that [Abrams] has pain to such an extent as to be distracting to adequate performance of daily activities or work. Physical activity will greatly increase her pain to a degree as to cause distraction from tasks or total abandonment of a task. The side effects of prescribed medication is expected to be severe and to limit effectiveness due to distraction, inattention and drowsiness (Exhibit B21F).

(R. 23.) The ALJ explained that he found Nurse Wilson's opinions only somewhat persuasive "because the treating records do not show this extensive degree of symptoms/limitations[.]" (R. 23.) The ALJ further explained that "after considering the record as a whole, including objective diagnostic tests and clinical findings on physical and mental examinations, [Abrams's] longitudinal treatment history, and her documented activities of daily living, [he] finds that [Abrams] is capable of performing a range of light unskilled work within" the parameters stated in the RFC. (R. 24.)

      Here, the Court finds no error in the ALJ's consideration of Nurse Wilson's opinions. The ALJ's explanation, which incorporates the record as a whole, is sufficient for the Court to determine that his weighing of Nurse Wilson's opinions is supported by substantial evidence. Nurse Wilson's own treatment notes from Abrams's first visit on June 4, 2020, reflect that Abrams's chief complaint was hypertension, she reported negatively for all of her systems (except for the reported numbness and tingling down her left arm from her neck), and her examination yielded normal results, including normal motor strength and tone, normal movement of all extremities, no edema, normal gait, normal mental status, and normal motor strength (right and left). (R. 825-826.) Months later, on October 2, 2020, Nurse Wilson's notes indicate that a physical examination of Abrams revealed many normal findings, including normal motor strength (right and left), normal gait, normal mental status, and normal ambulation, although Abrams had "positive carpal tunnel to right hand and [was] unable to fully extend two middle fingers on [her] left hand." (R. 814.) Likewise, as to Abrams's degenerative disk disease, Nurse Wilson's notes repeatedly document that Abrams denied joint or muscle pain and had normal muscle tone,

15

normal gait and normal strength despite concerns of possible cervicalgia. (R. 814, 823, 826-27, 864.) Nurse Wilson's notes from Abrams's last visit on July 14, 2021, when Abrams visited to refill her medications, reflect the same normal findings. (R. 1081-1084.) These normal findings support the ALJ's determination. *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. 2022) (noting that normal findings support the ALJ's determination that the claimant was not disabled).

In addition, the record evidence from other medical sources supports the ALJ's evaluation of Nurse Wilson's opinions. Treatment notes from other medical sources repeatedly show that, despite Abrams's cervical spondylosis, she had no spinal tenderness, no back tenderness, full range of motion, normal gait and intact sensation. (R. 278-79, 283, 297, 506, 541, 615, 634-35, 708, 719, 758, 766, 794.) An examination in July 2020 shows Abrams had nearly full range of motion in her cervical spine and shoulder (R. 821), and a later examination in April 2021 shows that Abrams had a normal neck (R. 972). Further, other medical sources reported Abrams's right carpal tunnel syndrome as "moderate" (R. 803, 818, 833), and in April 2021, after Abrams's carpal tunnel release, the treating medical source reported that Abrams had no swelling or tenderness on her right wrist, the sensation was "grossly intact," and she had appropriate range of motion (R. 859). At that same April 2021 appointment, the medical source advised Abrams to utilize a wrist brace for two weeks and restricted her to no heavy lifting, pushing or pulling for the next two weeks with gradual return to normal physical activities as tolerated. (R. 859.) This medical evidence does not support such extensive restrictions as opined by Nurse Wilson, but rather provides substantial evidence in support of the ALJ's finding.

The Court does not dismiss Abrams's assertion that Nurse Wilson's opinions[8] should be found persuasive because Abrams is correct to a certain degree. The record reflects that the ALJ thoroughly considered all the evidence and found Nurse Wilson's opinions to be partial or "somewhat" persuasive. Nonetheless, the ALJ weighed the evidence and sufficiently explained his conclusion concerning Nurse Wilson's opinions. Regardless of Abrams's disagreement, the Court may not reevaluate the basis of those conclusions. *See Dyer*, 395 F.3d at 1210; *also Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 138–39 (11th Cir. 2019) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it. We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.") (internal citations omitted). Accordingly, the Court finds no reversible error.

## VI.  CONCLUSION

After review of the administrative record, and considering all of the arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accordance with applicable law. Hence, it is hereby

---

[8] The Court notes that Nurse Wilson's explanation for the basis of her opined restrictions on the PCE (*i.e.*, "[p]atient known with multilevel degenerative disk disease and recent carpal tunnel of the right upper extremity") does not qualify as a medical opinion. *See Jones v. Comm'r of Soc. Sec.*, No. 5:20-CV-247-NPM, 2021 WL 4352383, at *5 (M.D. Fla. Sept. 24, 2021) ("For disability cases filed on or after March 27, 2017—such as this one—the term 'medical opinion' is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work and adapt to work-related conditions. *See* 20 C.F.R. § 404.1513(a)(2).").

ORDERED as follows:

1. The claimant's motion for summary judgment (Doc. No. 11) is DENIED.

2. The Commissioner's motion for summary judgment (Doc. No. 12) is GRANTED.

3. The decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

DONE this 31st day of August, 2023.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE